## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES GYPSUM CO., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | 22 C 268 |
| | ) | |
| DEPENDABLE, LLC, | ) | Judge Charles P. Kocoras |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

## MEMORANDUM OPINION AND ORDER

**CHARLES P. KOCORAS, District Judge:**

This matter is before the Court on Plaintiff/Counter-Defendant United States Gypsum Co.'s ("USG") Motion to Strike Defendant/Counter-Plaintiff Dependable, LLC's ("Dependable") Affirmative Defenses and USG's Motion to Dismiss Dependable's Counterclaims. For the reasons set forth below, the Motion to Strike is denied and the Motion to Dismiss is granted in part and denied in part.

## BACKGROUND

The following facts are taken from the counterclaim and are assumed to be true for purposes of this motion. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Dependable's favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

Dependable is a manufacturer of floor preparation products. One of the products it makes and sells to customers is called GSL K2.6. Dependable contends that "GSL" is a registered trademark of Dependable. USG is a manufacturer of gypsum-cement underlayments, and is one of Dependable's competitors in the market. USG manufactures a product called Levelrock. In January 2020, Jim Keene of Dependable and Joe Adcock of USG met as part of negotiations for a business deal pertaining to gypsum. USG would produce Dependable's GSL K2.6 product, using Dependable's formulation and in a specific volume. According to Dependable, Adcock repeatedly told Keene that USG had the capacity to meet Dependable's volume requirements and expressly represented that USG would produce the GSL K2.6 product as specified by Dependable. Based on Adcock's representations, the parties entered into a "Private Label Agreement" ("PLA").

Eventually, this business arrangement turned sour. A dispute arose, with both Dependable and USG believing the other breached the PLA. Dependable alleges that it has since learned that Adcock's representations were false and that USG knew that: it didn't have the capacity to meet the demands specified in the PLA, it wasn't going to produce the GSL K2.6 according to Dependable's formulation, and USG's production process was not capable of manufacturing both Dependable's and USG's products in a manner that maintained the quality of the GSL K2.6. Dependable alleges it was receiving complaints from its customers using the USG-supplied product that the product was virtually unusable. Dependable later learned that Levelrock was

experiencing the same kind of problems. Dependable claims that all along, USG was putting its own Levelrock product in bags labeled as GSL K2.6. The question as to when Dependable learned all of this information is disputed.

After several months of negotiations, the parties entered into a Settlement Agreement to resolve their disputes stemming from the PLA. Dkt. # 1. The terms of the Settlement Agreement provided that Dependable "release[d] and forever discharge[d]" USG from all claims "of every name, kind, nature and description . . . suspected or unsuspected, known or unknown" existing prior to the effective date of November 1, 2021. Dkt # 5-2, ¶ 3(a). The parties also affirmed the Settlement Agreement was not "subject to any defense or claim of invalidity, fraud, duress . . . ." *Id.*, ¶ 13. Additionally, Dependable acknowledged that it executed the Settlement Agreement of its own free will, relied on the advice of counsel before executing it, and did not rely "on any oral or written statement, representation, warranty, or other assurance." *Id.*, ¶¶ 7, 11.

Dependable now claims USG fraudulently induced it to enter into both the PLA and the Settlement Agreement because USG falsely represented that it could provide products and services that it could not. Specifically, Dependable asserts that at the time it executed the Settlement Agreement, it had no idea that USG allegedly was: (1) using a formulation other than the one Dependable provided; and (2) knowingly unable to produce enough product to meet Dependable's volume requirements.

On January 21, 2022, USG filed its complaint against Dependable, listing causes of action for breach of contract, unjust enrichment, promissory estoppel, and "account stated" (in the alternative to its breach of contract claim). On August 25, 2022, Dependable filed its answer to USG's complaint, which included affirmative defenses of fraud, estoppel, unclean hands, payment, duress, and failure of consideration. Dependable also brought several counterclaims for fraudulent inducement, false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), violation of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 ILCS 510/1 *et seq.*, common law unfair competition, declaratory judgment, and alternatively, breach of contract and unjust enrichment. USG now moves to dismiss the counterclaims and strike certain affirmative defenses from Dependable's answer.

## DISCUSSION

USG moves to strike the affirmative defenses of fraud, estoppel, unclean hands, and duress from Dependable's answer, and to dismiss the counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will address both motions, beginning with the motion to dismiss.

### I. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true well pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d

4

610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, plaintiffs must describe "the who, what, where, when, and how of the fraud," though precisely how much information is required for each of those descriptions varies depending on the facts of a case. *Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018). Rule 9(b)'s purpose is "to ensure that the party accused of fraud . . . is given adequate notice of the specific activity that the plaintiff's claims constituted the fraud so that the accused party

5

may file an effective responsive pleading." *Lachmund v. ADM Inv. Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999).

### a. Initial Arguments

We first address USG's primary argument in favor of dismissing Dependable's counterclaims, which is that those claims are barred by the release provision in the Settlement Agreement. Dependable correctly argues, however, that "[a]s with any contract, a release may be set aside if there is fraud in the inducement." *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003). This is what Dependable alleges.

USG further asserts that Dependable and its counsel were aware of the facts it believes support its counterclaims no later than July 2021, several months before the Settlement Agreement's effective date. USG attaches certain documents from the settlement negotiations to its motion to dismiss which it says directly contradict Dependable's claims that it had no knowledge of the alleged fraud theories prior to the execution of the Settlement Agreement. Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Dependable disputes that the documents attached to the motion are properly before the Court because the documents are neither referred to in nor attached to the counterclaim. Dependable argues that it expressly claims that oral representations by

6

USG's representatives form the basis of its claims, those allegations directly support Dependable's claims, and nothing at this stage of the litigation provides a basis for the Court to ignore them.

In the Court's view, consideration of the settlement negotiation documents would convert the motion to dismiss into one for summary judgment. And, even if the Court did consider the documents, the documents do not directly contradict Dependable's claims that it had no knowledge that USG was allegedly putting its own Levelrock product into bags with Dependable's label. The validity of the Settlement Agreement cannot be determined at this stage. Discovery may very well reveal a lack of fraud, which might then doom many of Dependable's counterclaims. But for now, the Court declines to dismiss Dependable's claims based on the release provision in the Settlement Agreement.

Finally, the Court rejects USG's arguments that Dependable's counterclaims sounding in fraud do not comply with the heightened pleading requirements of Rule 9(b). Dependable has stated plenty of facts to support the particulars of the alleged fraud. Dependable alleges that the "who" is Joe Adcock of USG. The "what" is USG's false misrepresentations (allegedly through Adcock) "that it could produce GSL K2.6 product pursuant to Dependable's proprietary formulation and [specifications]." Dkt. 44, at 15. The "when" is as early as 2020. Although Dependable does not expressly state *where* Adcock was when he made the allegedly false representation, it does state the how – in a conversation had with Jim Keene, an agent of Dependable. Dependable

has not merely made conclusory allegations of fraud but has pleaded several paragraphs of information pertaining to specific facts that it alleges as a part of its counterclaims and affirmative defenses sounding in fraud.

USG also argues that Dependable does not plead damages in compliance with Rule 9(b). More specifically, USG claims that Dependable's allegations it suffered $600,000 in damages is conclusory and unsupported. But the counterclaim includes additional allegations of damages, such as storage, demurrage, and dunning costs, loss of customers, and payment of higher prices for an inferior product. Dependable has met its burden.

### b. Counts I and II: Fraudulent Inducement

In Count I, Dependable brings a fraudulent inducement claim related to the PLA. Count II is a fraudulent inducement claim related to the Settlement Agreement. "In Illinois, fraudulent inducement requires proof of five elements: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Hoseman*, 322 F.3d at 476 (internal quotation marks omitted).

USG argues Dependable's fraud claims are really just claims of promissory fraud, i.e., a false statement of intent regarding future conduct, which "is generally not actionable under Illinois law unless the plaintiff also proves that the act was part of a scheme to defraud." *Ass'n Benefit Servs., Inc. v. Caremark Rx, Inc.*, 493 F.3d 841, 853

8

(7th Cir. 2007). Promissory fraud claims are generally disfavored because "anyone with a breach of contract claim could open the door to tort damages by alleging that the promises broken were never intended to be performed." *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992).

Dependable contends its claims do not sound in promissory fraud as USG argues, because the claims are based on USG's false claims of its then-*present* capabilities. Specifically, Dependable alleges that USG falsely represented its then-present ability to manufacture Dependable's product in the amounts required and according to Dependable's formula and specifications. Such a claim sounds in fraud, not promissory fraud. *See Specialty Moving Sys., Inc. v. Safeguard Computer Servs., Inc.*, 2002 WL 31178089, at *4 (N.D. Ill. Sept. 30, 2002) ("Count V alleges that defendants made misrepresentations concerning the *present* capabilities of their software, which is sufficient to state a claim for fraud.").

Even if construed as promissory fraud claims, Dependable's claims pass muster. USG argues Dependable's allegations that USG told Dependable it would and could perform according to the contracts don't rise to the high level of "scheme to defraud" and were not a part of a larger conspiracy involving misrepresentations to other parties. But Illinois courts have often found that "a fraud claim may arise out of a defendant's misrepresentations to the plaintiff in the course of negotiating a transaction between the parties, provided there is more than just a broken promise to indicate fraudulent intent at the time of the negotiations." *Meridian Labys., Inc. v. OncoGenerix USA, Inc.*, 2020

WL 2468174, at *5 (N.D. Ill. 2020) (collecting cases). Dependable says that's what it alleges here—that over the course of the negotiations prior to the PLA and again prior to the execution of the Settlement Agreement, USG made repeated misrepresentations regarding its present ability to produce Dependable's product in the required and specified amounts.

USG contends that missing from the fraudulent inducement claims are allegations of "specific, objective manifestations of fraudulent intent" of the sort necessary to indicate a "scheme" to defraud. *See Bower*, 978 F.2d at 1012. In the Court's view, however, Dependable's allegations, for example, that USG continued to falsely represent that it had the capacity to fulfill orders as promised—all the while putting its own Levelrock formulation in Dependable's bags—are sufficient to survive USG's motion to dismiss.

The Court also rejects USG's argument that the Settlement Agreement's "no reliance" clause bars Dependable's fraudulent inducement claim in Count II. Because justifiable reliance is an element of any fraud claim, parties to a contract often may "head off the possibility of a fraud suit" by incorporating—as they did here—a non-reliance clause into their written contract, "stating that neither party has relied on any representations made by the other." *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644 (7th Cir. 2002); *see also Triumph Packaging Grp. v. Ward*, 877 F. Supp. 2d 629, 647 (N.D. Ill. 2012) (non-reliance clauses in a contract can preclude fraud claims "because they inherently disprove reasonableness."). The existence of a "no-

10

reliance" clause, however, "functions as an affirmative defense, and a plaintiff (which is [Dependable's] posture on this motion) 'ordinarily need not anticipate and attempt to plead around affirmative defenses.'" *In the Matter of the Complaint of Kindra Lake Towing, L.P.*, 2016 WL 3227303, at *3 (N.D. Ill. 2016) (quoting *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016)).

Furthermore, the validity of the Settlement Agreement (and therefore, the no reliance clause), is being challenged. To decide whether the no reliance clause bars Dependable's fraud claims, the Court would have to first determine that the Settlement Agreement is valid and enforceable, which, as noted above, isn't something appropriate for resolution at this stage of the litigation. The Court declines to dismiss Count II on this basis. For the same reason, the Court also declines to dismiss Counts I and II on the basis of USG's arguments that Dependable waived its claims against USG as part of the Settlement Agreement. USG's motion to dismiss is denied as to Counts I and II.

### c. Count III: Violation of the Lanham Act for False Designation of Origin

USG next argues that the Court must dismiss Count III because Dependable has not sufficiently pleaded a violation of the Lanham Act. The elements of a Lanham Act claim are: "(1) the defendant used a false designation of origin or false representation in connection with its goods; (2) the defendant caused those goods to enter interstate commerce; and (3) consumers are likely to be confused by the false representation." *VitalGo, Inc. v. Kreg Therapeutics, Inc.*, 370 F. Supp. 3d 873, 889 (N.D. Ill. 2019).

11

False designation of origin claims take two basic forms, "passing off" and "reverse passing off." *Id.* Passing off occurs when a firm puts someone else's trademark on its own (usually inferior) goods; reverse passing off or misappropriation is selling someone else's goods under your own mark. *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 580 (7th Cir. 2005).

Dependable alleges that USG's conduct was an artifice for passing off its Levelrock and falsely designating Levelrock as GSL K2.6, leading customers to be confused. To state a claim for violation of the Lanham Act, Dependable need merely allege a set of facts, which, if adduced by proper evidence in discovery or at trial, would entitle them to recovery. Here, Dependable has alleged USG used a false representation, i.e., labeling Levelrock as GSL K2.6, to mislead consumers in interstate commerce. The operative phrase here is "false representation." If it were discovered to be true that USG purposefully filled bags of its own Levelrock product only to slap "GSL K2.6" labels on them in order to deceive consumers in interstate commerce, then USG would liable for a Lanham Act violation. Of course, on a motion to dismiss, the Court doesn't test the merits of the claims. The Court therefore finds that Dependable has stated a claim for violation of the Lanham Act, and the motion to dismiss this count must be denied.

### d. Count IV: Violation of the IUDPTA

Dismissal of the IUDPTA claim is appropriate because Dependable seeks "equitable disgorgement," and only injunctive relief is available under the IUDPTA.

*See* 815 ILCS 510/3 ("A person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable."). Dependable agrees and seeks leave to amend Count IV to seek injunctive relief.

USG argues the counterclaim does not support injunctive relief because Dependable fails to allege the sort of future harm required to support such a claim. The Court agrees. Dependable alleged it cancelled all of its orders and announced that it would refuse to accept any additional GSL K.26 from USG. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) ("Camasta cannot obtain injunctive relief under the UDTPA because he failed to sufficiently alleged that JAB's conduct will likely cause him harm in the future. . . . Since Camasta is now aware of JAB's sales practices, he is not likely to be harmed by the practices in the future. Without more than the speculative claim that he will again be harmed by JAB, Camasta is not entitled to injunctive relief.") (cleaned up). Count IV is dismissed, without prejudice and with leave to amend.

### e. Count V: Common Law Unfair Competition

In Count V, Dependable brings a claim for common law unfair competition. Because USG's only argument in favor of dismissing Count V is that it "'rise[s] or fall[s] based on the Lanham Act claim,'" the motion is denied as to Count V for the reasons stated above with respect to Count III.

### f. Count VI: Declaratory Judgment

In Count VI of its counterclaim, entitled "Declaratory Judgment", Dependable seeks a declaration that the PLA and Settlement Agreement were void *ab initio*. USG contends that "[d]eclaratory relief is not a stand-alone cause of action," and that an action for declaratory relief here "serves no useful purpose because the controversy has ripened." Dkt. # 50, at 12. Dependable, in response, concedes that "dismissal may be appropriate where the claim duplicates underlying claims for substantive relief." Dkt. # 56, at 13. Here, Dependable has answered USG's claims for breach of the PLA and Settlement Agreement, and thus the parties will be proceeding to discovery on those claims regardless of the outcome of the instant motion. Therefore, the Court sees no adjudicative efficiency to be achieved in ruling on a declaratory judgment action that will essentially duplicate the substantive issues in USG's contract claims. Therefore, Count VI of the counterclaim is dismissed.

### g. Count VII: Breach of the Covenant of Good Faith and Fair Dealing Under the PLA (Pleaded in the Alternative to Count I)

Count VII of Dependable's claim seeks relief for a breach of the covenant of good faith and fair dealing in connection with the PLA. The duty of good faith and fair dealing exists in every contract as "an implied promise between the parties that they will not do anything to injure the other party's right to enjoy the benefits of the contract." *E.B. Harper & Co. v. Nortek, Inc.*, 104 F.3d 913, 919 (7th Cir. 1997); *see*

14

*also*, *e.g.*, *N. Am. Elite Ins. Co. v. Menard Inc.*, 491 F. Supp. 3d 333, 339 (N.D. Ill. 2020) (stating that the duty "ensure[s] that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted"). However, Illinois law generally does not recognize an independent cause of action for breach of the duty of good faith and fair dealing, and applies it instead "as an aid in construing a contract under Illinois law." *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 755 (7th Cir. 2013). USG's motion to dismiss is granted as to Count VII. *See Nat'l Fire & Marine Ins. Co. v. GlenCrest Healthcare & Rehab. Ctr., Ltd.*, 2022 WL 3026933, at *6 (N.D. Ill. 2022) (collecting cases).

### h. Counts VIII and IX: Breach of the PLA (In the Alternative to Counts I and X) and Breach of the Settlement Agreement (In the Alternative to Counts II, VI, and X)

Under Rule 8(d)(2), "a party may set out 2 or more statements of a claim or defense alternatively or hypothetically." Fed. R. Civ. P. 8(d)(2). Here, Dependable has pleaded breach of contract claims pertaining to the PLA and the Settlement Agreement in the alternative to its fraudulent inducement claims. This is appropriate under the Rules. Taken as true for purposes of this motion, Dependable's allegations are sufficient to establish that, assuming the validity of the PLA and the Settlement Agreement, USG breached its obligations to Dependable under one or both of those agreements.

### i. Count X: Unjust Enrichment (In the Alternative[1])

Finally, USG moves to dismiss Dependable's unjust enrichment claim because the conduct at issue is the subject of an express contract between the parties. To state a claim for unjust enrichment under Illinois law, a plaintiff must allege that the "defendant has unjustly retained a benefit to the plaintiff's detriment and the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *See Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014) (alteration accepted). "Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law." *Nesby v. Country Mut. Ins. Co.*, 346 Ill. App. 3d 564, 567 (5th Dist. 2004). Thus, the remedy of unjust enrichment is unavailable "[w]here there is a specific contract that governs the relationship of the parties," unless it is pleaded in the alternative. *Id*.

While Dependable's unjust enrichment claim is pleaded in the alternative to its breach of contract claims, Dependable incorporated allegations of the existence of the PLA and Settlement Agreement. In most situations, this would necessitate dismissal of the claim. *See Team Impressions, Inc. v. Chromas Techs. Canada, Inc.*, 2003 WL 355647, at *4 (N.D. Ill. 2003). Under Illinois law, however, a plaintiff may allege unjust enrichment as well as the existence of a governing contract when the claim is

---

[1] Dependable's counterclaim states that this claim is pleaded in the alternative to "Counts I, II, VI, VII, VII, and IV." Dkt. # 44, at 43. The Court assumes this was a typographical error and that Dependable meant to plead Count X in the alternative to Counts I, II, VI, VII, VIII, and IX (fraudulent inducement, declaratory judgment, breach of the duty of good faith and fair dealing, and breach of contract).

based on defendant's tortious conduct. *Liberty Mut. Ins. Co. v. Decking and Steel, Inc.*, 301 F. Supp. 2d 830, 835 (N.D. Ill. 2004) (citing *Peddinghaus v. Peddinghaus*, 295 Ill. App. 3d 943, 949 (1st Dist. 1998) (denying summary judgment on unjust enrichment claim despite contract between parties because the unjust enrichment sounded in tort, rather than quasi-contract)).

Here, Dependable says its unjust enrichment claim is based on USG's fraudulent conduct that induced it to enter into the Settlement Agreement. "A successful showing of fraudulent inducement invalidates a contract, clearing the way for an unjust enrichment claim." *Mashalla, Inc. v. West Bend Mut. Ins. Co.*, 20 F.4th 311, 325 (7th Cir. 2021) (internal citation omitted); *see also Peddinghaus*, 295 Ill. App. 3d at 949. USG's motion to dismiss is denied as to Count X.

## II.     Motion to Strike

USG moves to strike Dependable's affirmative defenses of fraud, estoppel, duress, and unclean hands. Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense . . . ." Fed. R. Civ. P. 12(f). "Motions to strike are generally disfavored because they 'potentially serve only to delay.'" *Maui Jim, Inc. v. SmartBuy Guru Enters.*, 386 F. Supp. 3d 926, 937 (N.D. Ill. 2019) (quoting *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989)). But "when striking portions of a pleading removes unnecessary clutter from the case, the motion may serve to expedite, not delay." *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1039 (N.D. Ill. 2014) (cleaned up). As a result,

"[a]ffirmative defenses will be stricken only when they are insufficient on the face of the pleadings." *Heller*, 883 F.2d at 1294.

USG argues Dependable's affirmative defenses of fraud, estoppel, unclean hands, and duress are based in fraud and fail to meet Rule 9(b)'s heightened pleading standards. However, as discussed above, Dependable has laid out sufficient facts in support of its fraud claims, and the same goes for its affirmative defenses. The Court declines to strike Dependable's affirmative defenses on this basis.

USG also argues that Dependable cannot plead duress because it negotiated the Settlement Agreement with the representation of counsel. "Illinois defines duress as a condition where one is induced by a wrongful act or threat of another to make a contract under circumstances which deprive him of the exercise of his free will." *Rissman v. Rissman*, 213 F.3d 381, 386 (7th Cir. 2000) (cleaned up). The requirement that the plaintiff be deprived of free will is a stringent one—the plaintiff must be left with no alternative but to enter into the contract. *Castellano v. Wal-Mart Stores*, 373 F.3d 817, 820 (7th Cir. 2004) (applying Illinois law). The essential question is whether a "threat has left the individual bereft of the quality of mind essential to the making of a contract." *Rissman*, 213 F.3d at 386.

"Duress does not exist merely where consent to an agreement is secured because of hard bargaining positions or the pressure of financial circumstances." *Higgins v. Brunswick Corp.*, 76 Ill. App. 3d 273, 277 (1st Dist. 1979). The issue of duress, however, "is a factual inquiry which involves a consideration of all of the circumstances

18

surrounding a given transaction." *Ficke v. Johns*, 1996 WL 99424, at *5 (N.D. Ill. 1996) (citing *Laemmar v. J. Walter Thompson Co.*, 435 F.2d 680, 682 (7th Cir. 1970)). USG has not demonstrated as a matter of law that Dependable cannot assert an affirmative defense of duress solely because it was represented by counsel. USG's motion to strike is denied.

## CONCLUSION

For the foregoing reasons, USG's Motion to Strike is denied. USG's Motion to Dismiss is granted in part and denied in part. Counts IV, VI, and VII are dismissed. Status is set for 5/30/2023 at 10:50 a.m.

It is so ordered.

Dated: May 16, 2023

Charles P. Kocoras
United States District Judge