**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES GYPSUM CO.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 22-cv-268** |
| v. | ) | **(Consolidated with No. 25-cv-4442)** |
| | ) | |
| **DEPENDABLE, LLC, and KEENE** | ) | **Judge Jeffrey I. Cummings** |
| **BUILDING PRODUCTS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| ------------------------------------------------- | ) | |
| **DEPENDABLE, LLC,** | ) | |
| | ) | |
| **Counter-Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED STATES GYPSUM CO.,** | ) | |
| | ) | |
| **Counter-Defendant,** | ) | |
| ------------------------------------------------- | ) | |
| **KEENE BUILDING PRODUCTS, INC.,** | ) | |
| **and KEENE, INC.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED STATES GYPSUM CO.,** | ) | |
| | ) | |
| **Defendant.** | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

United States Gypsum ("USG"), a manufacturer of gypsum and cement-based

construction products, brings this action against defendants Dependable, LLC ("Dependable")

and its alleged affiliate Keene Building Products, Co. ("KBP"), asserting claims related to a

breach of a prior settlement agreement. KBP (but not Dependable) now seeks to dismiss

plaintiff's second amended complaint pursuant to Rules 12(b)(2) and 12(b)(6),[1] arguing that the Court lacks personal jurisdiction over KBP and that USG has otherwise failed to state its claims. For the reasons set forth below, the Court denies KBP's request to dismiss for lack of jurisdiction under Rule 12(b)(2), but grants KBP's request to dismiss under Rule 12(b)(6) for failure to state a claim. USG's claims against KBP are dismissed without prejudice and with leave to replead to the extent USG can do so in accordance with Rule 11.

## I. LEGAL STANDARD

A motion under Rule 12(b)(2) tests the Court's personal jurisdiction over a defendant. "The plaintiff need not include facts alleging personal jurisdiction in the complaint, but 'once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020), *quoting Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). Where, as here, "the Court rules on the motion without a hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction." *MG Design Assocs., Corp. v. CoStar Realty Info., Inc.*, 267 F.Supp.3d 1000, 1010 (N.D.Ill. 2017). In determining whether plaintiff has made such a showing, the Court will "read the complaint liberally, in its entirety, and with every inference drawn in favor" of the plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (cleaned up).

---

[1] KBP's motion to dismiss was initially targeted at USG's first amended complaint. In response, however, USG voluntarily dismissed Counts VI and IX-XII. By agreement of the parties and with leave of Court, USG then filed its second amended complaint and the parties agreed that the parties' briefing on the motion to dismiss would stand. Of course, any arguments in KBP's motion targeted at Counts VI and IX-XII are now moot and will not be addressed by the Court.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss under Rule 12(b)(6), the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Dismissal of an action under Rule 12(b)(6) is "warranted only if no relief could be granted under any set of facts that could be proved consistent with the allegations." *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Nonetheless, courts are permitted to consider "any facts set forth in the complaint that undermine the plaintiff's claim." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (cleaned up).

When resolving a motion under Rule 12(b)(6), "in addition to the allegations set forth in the complaint itself," the Court may consider, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## II.     BACKGROUND

The following relevant allegations are taken from USG's second amended complaint, (Dckt. #221), the documents attached thereto, including the settlement agreement at issue, and any documents and information that are subject to judicial notice.

Plaintiff USG is a manufacturer of gypsum plaster and gypsum and cement-based construction products, including poured gypsum flooring underlayment products. (Dckt. #221

3

¶14). Defendant Dependable is a distributor of gypsum floor underlayment products. (*Id*. ¶15). Defendant KBP is a manufacturer that offers a wide range of products for various construction applications and is an "affiliate" of Dependable. (*Id*. ¶¶7, 16). USG alleges that KBP "acquired and added" Dependable "to its family of companies" to "help KBP create stability and manufacturing expertise in floor underlayment," including gypsum floor underlayment. (*Id*. ¶16). USG alleges further that Dependable and KBP: share the same address in Ohio; the same shareholder, officers, directors and employees; the same customers; the same email accounts; the same lawyers; and, upon information and belief, the same losses and the same pricing terms, profits and other benefits derived from the sales of the products at issue in this case. (*Id*. ¶8).

Dependable, "acting at all relevant times . . . as an affiliate of KBP," initially made contact with USG in early 2020 for the purpose of facilitating a business relationship. (*Id*. ¶¶9, 15). Negotiations followed and ultimately, on September 18, 2020, USG and Dependable entered into a Private Label Agreement ("PLA"), pursuant to which USG agreed to manufacture and privately label certain gypsum products for Dependable for agreed-upon prices. (*Id*. ¶¶5, 9, 17-18; Dckt. #223). The custom products were marketed and sold by Dependable under Dependable's own product name and packaging. (Dckt. #221 ¶17).

Following the execution of the PLA, a dispute arose and USG and Dependable asserted claims against one another, arising under or related to the terms of the PLA. (*Id*. ¶19). Without admitting fault or liability, USG and Dependable settled their dispute through a settlement agreement (the "Agreement") on or about November 1, 2021. (*Id*. ¶20; Dckt. #224). Pursuant to the Agreement, the parties terminated the PLA effective July 31, 2021, and agreed that any products USG delivered prior to August 1, 2021 were considered to have been delivered pursuant to the terms of the PLA. (Dckt. #221 ¶21). The parties further agreed to certain rights, duties,

4

and obligations from August 1, 2021 through December 31, 2021 (hereinafter, the "Settlement

Period"). (*Id*. ¶22). Specifically, the Agreement identified requirements and specifications for

USG's manufacturing, packaging, and labeling of the privately labeled custom gypsum products

ordered under the Agreement during the Settlement Period. (*Id.* ¶24). The parties also agreed to

certain ordering and delivery terms during the Settlement Period, including that Dependable

would place all orders in writing and pay USG on a net 60-day basis, based on invoice date. (*Id.*

¶¶25-26). The Agreement also provided as follows:

> **BINDING ON SUCCESSORS, ASSIGNS, AND OTHER BENEFICIARIES.**
> The terms of this Agreement, including all terms set forth in the Appendix hereto,
> shall be binding upon and shall inure to the benefit of the successors, assigns,
> parents, subsidiaries, ***affiliates***, joint ventures, divisions, stockholders, and general
> or limited partners of the Parties (including the current and former employees,
> officers, directors, attorneys, agents, representatives, any and all corporations,
> partnerships, or other entities into or with which any Party may merge, consolidate,
> or reorganize, heirs, assigns, executors, administrators, successors in business or
> interest and all persons and entities claiming through them).

(Dckt. #221-2 ¶15) (emphasis added).

According to USG, Dependable and KBP submitted orders to USG during the Settlement

Period, which were then "deemed accepted by USG." (*Id*. ¶27). Upon receiving those orders,

USG began manufacturing the custom gypsum products pursuant to the specifications provided

for in the Agreement. (*Id*. ¶28). In USG's view, because these orders were deemed accepted by

USG, the submitted orders constituted a valid contract which obligated Dependable and KBP to

pay USG for the orders. (*Id*. ¶29).

However, on or around December 20, 2021, Dependable and KBP cancelled all of its

orders, announced that it would refuse to accept any additional products from USG, and further

indicated that they would not be paying the full value for products that had already been

delivered to and accepted by Dependable and KBP. (*Id*. ¶¶30-31). USG alleges that

Dependable and KBP then continued to sell USG's products to their customers for considerable profit.  (*Id*. ¶¶33-34).

USG initiated this action on January 21, 2022 against Dependable only.  (Dckt. #1). Much later, on October 25, 2024, with the benefit of discovery, USG sought leave to amend its complaint to assert claims against KBP.  (Dckt. #136)  In the operative pleading, USG now asserts claims against Dependable and KBP for, *inter alia*, breach of the Settlement Agreement, promissory estoppel, and account stated.  (Dckt. #221).

A few days after USG initially sought leave to add claims against KBP in this case, KBP and its parent company, Keene, Inc. filed a complaint in the Northern District of Ohio (hereinafter, the "Ohio case") against USG asserting claims arising out of the same PLA and Settlement Agreement.  *See Keene v. United States Gypsum*, Case No. 25-cv-4442, Dckt. #1. USG then moved to dismiss the Ohio case or, alternatively, to transfer the case to this Court pursuant to 28 U.S.C. §1404.  On April 22, 2025, over Keene and KBP's opposition, the Ohio court granted USG's motion to transfer to this Court finding, *inter alia*, that the Ohio case and this case stem from the same conduct and that the public-interest concern of judicial economy weighed strongly in favor of transfer.  *Keene*, Case No. 25-cv-4442, Dckt. #22.

After the Ohio case was transferred to the Northern District of Illinois, this Court granted USG's unopposed motion to re-assign and consolidate the Ohio case with this matter, and the cases have since been fully consolidated before this Court.  (Dckt. #245)  Since that time, Keene and KBP filed an amended complaint continuing to assert its claims against USG arising from the PLA and the Settlement Agreement before this Court.  (Dckt. #261).

### III.    ANALYSIS

KBP moves to dismiss USG's claims on the grounds that: (1) the Court lacks personal jurisdiction over it; and (2) USG has otherwise failed to state its claims. For the following reasons, the Court finds that USG has since consented to the Court's jurisdiction, but agrees that, as pled, USG has failed to properly state its claims against KBP under Rule 12(b)(6).

### A.    KBP has consented to this Court's personal jurisdiction by continuing to pursue its claims against USG before this Court.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction [over a party]." *Walden v. Fiore*, 571 U.S. 277, 283 (2014), *quoting Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014). Illinois employs a long-arm statute which applies the same standard as federal due process: a defendant must have sufficient contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017), *quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Physical presence in the forum state is not required, but there must be sufficient minimum contacts such that the defendant "should reasonably anticipate being haled into court there." *Brook*, 873 F.3d at 552.

Personal jurisdiction may be "general" or "specific," *Rogers v. City of Hobart, Ind.*, 996 F.3d 812, 818 (7th Cir. 2021), *quoting Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021). "General jurisdiction permits a defendant to be sued in a particular forum for any claim, regardless of whether the claim has any connection to the forum state." *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020). In contrast to general jurisdiction, "[s]pecific jurisdiction is 'case-linked.'" *Pit Viper, LLC v. Xi'an Jiaye Tengda Trading Co.*, No. 23 C 14761, 2024 WL 5039888, at *3 (N.D. Ill. Dec. 9, 2024), *quoting Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017).

That is, "the suit must arise out of or relate to the defendant's contacts with the forum, meaning there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers*, 582 U.S. at 262 (cleaned up). The protection provided by the Due Process clause, however, is waivable. Indeed, "[c]hallenges to personal jurisdiction may be waived by either express or implied consent." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1290 (7th Cir. 1989).

Here, the parties spent the majority of their briefs disputing whether this Court has personal jurisdiction over KBP, namely specific jurisdiction, in light of Judge Kocoras's prior order finding personal jurisdiction over *Dependable* and the affiliate relationship between Dependable and KBP. However, since submitting their initial briefs, the Ohio case has been transferred and consolidated before this Court and, by recently filing an amended complaint against USG, KBP has implicitly consented to the personal jurisdiction of this Court for the claims arising out of the PLA and the Settlement Agreement and abandoned its arguments regarding personal jurisdiction. *See Trade Well Int'l v. United Central Bank*, 825 F.3d 854, 859 (7th Cir. 2016) ("A district court may exercise personal jurisdiction over any party that purposefully avails itself of the forum."). Indeed, despite initially expressing its intent to do so, (*see* Dckt. #244 at 1), KBP never sought leave to file a response to USG's sur-reply in which USG argued that the issues of personal jurisdiction are now moot. As such, the Court finds that KBP has consented to the personal jurisdiction of this Court and denies its request to dismiss under Rule 12(b)(1).

**B. KBP's motion to dismiss for failure to state a claim under Rule 12(b)(6) is granted.**

KBP also argues that USG has failed to state its claims for breach of the Settlement Agreement (Count V), promissory estoppel (Count VII), and account stated (Count VIII) and that dismissal is required under Rule 12(b)(6). For the reasons that follow, the Court grants KBP's motion to dismiss for failure to state a claim.

**1. USG has failed to state a claim against KBP for breach of the Agreement.**

KBP first argues that USG has failed to state a claim for breach of the Settlement Agreement for the simple fact that it was not a signatory to the Settlement Agreement (or the PLA). In response, USG does not dispute that KBP was not a signatory to the Agreement, but argues that as a third-party beneficiary to the Agreement, KBP is subject to a claim for breach of contract. The Court disagrees for the following reasons.

To state a claim for breach of contract under Illinois law, a plaintiff must allege "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). And, of course, generally speaking, "a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). "Nevertheless, some traditional principles of state law allow a contract to be enforced by or against nonparties to the contract . . . including assumption, agency, veil piercing, alter ego, waiver, estoppel, third-party beneficiary, and incorporation by reference." *Warciak v. Subway Restaurants, Inc.*, 880 F.3d 870, 872 (7th Cir. 2018) (cleaned up).

According to USG, applicable here is the third-party beneficiary principle, which is an "exception to the general rule that only parties to a contract may seek to enforce its terms." *Dish Purchasing Corp. v. Suncraft Techs., Inc.*, No. 22-CV-00127-CMA-KLM, 2023 WL 1801336, at

9

\*5 (D.Colo. Feb. 7, 2023).  Illinois recognizes two types of third-party beneficiaries: intended and incidental.  *Hacker v. Shelter Insurance Co.*, 902 N.E.2d 188, 195 (Ill.App.Ct. 2009).  A contract bestows *enforceable* rights to intended beneficiaries but not to incidental ones.  *Id.* "Illinois courts . . . 'recognize a strong presumption against conferring contractual benefits on noncontracting third parties.'"  *Sosa*, 8 F.4th at 639, *quoting Marque Medicos Farnsworth, LLC v. Liberty Mut. Ins. Co.*, 117 N.E.3d 1155, 1159 (Ill.App.Ct. 2018); *see Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1021 (7th Cir. 2024) (collecting cases) (describing the basis for third-party beneficiary arguments as "shaky legal ground").

> To overcome that presumption, as explained by the Seventh Circuit,
>
> It is not enough to show that the parties know, expect, or even intend that others will benefit from the agreement. Instead, for a nonparty to qualify as a third-party beneficiary, the language of the contract must show that the contract was made for the direct, not merely incidental, benefit of the third person.  This intention must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs.

*Sosa*, 8 F.4th at 639 (citing *Marque Medicos Farnsworth, LLC*, 117 N.E.3d at 1159) (cleaned up).

Here, even if the Court agrees that KBP—an undisputed "affiliate" of Dependable—is a third-party beneficiary under the terms of the Agreement, as in *Dish Purchasing Corp v. Suncraft Tech.*, USG "has provided no authority for its position that a third-party beneficiary may be sued for breach of contract."  2023 WL 1801336, at \*5.  And, in fact, authority across various jurisdictions, including this one, points to the contrary.  *See, e.g., Am. Credit Indem. Co. v. HCG Fin. Servs., Inc.*, No. 89 C 9583, 1991 WL 119129, at \*2 (N.D.Ill. June 24, 1991) ("Third-party beneficiaries have no contractual obligations, only benefits."); *IIT, Inc. v. Commc'ns. Distribs., LLC*, No. 20-cv-01580-RM-STV, 2021 WL 5240243, at \*4 (D.Colo. Jan 27, 2021) (rejecting application of the third-party beneficiary rule and noting that "[t]he Court is not aware of

caselaw supporting Plaintiffs' assertion that a party may be held liable for breach of a contract to which it was not a party"); *Anago Franchising, Inc. v. Shaz, LLC*, No. 10-62273, 2012 WL 12860742, at *3 (S.D.Fla. Nov. 27, 2012) (reviewing cases and determining that "even if Defendants are third-party beneficiaries, they cannot breach a contract to which they are not parties"); *Focus Direct, Inc. v. Sekulow*, No. SA-02-CA-1175-RF, 2003 WL 22143281, at *1 (W.D.Tex. Sept. 5, 2003) ("Defendants have not cited, and the Court has not found, any authority for the proposition that a third-party beneficiary may *be sued* for breach of a contract to which the beneficiary was not a party."); *Implement Serv., Inc. v. Tecumseh Prods. Co.*, 726 F.Supp.1171, 1183 (S.D.Ind. 1989) (holding that although a third-party beneficiary could "sue in some circumstances for enforcement of the contract," a third-party beneficiary "could not be sued on the contract" because third-party beneficiaries "have no contractual obligations, only benefits").

This Court agrees with this authority and finds that USG has failed to state a claim for breach of the settlement agreement against KBP, at least, as pled, as a third-party beneficiary of the Agreement.[2] The Court thus grants KBP's motion to dismiss Count V.

### 2. USG has failed to state a claim against KBP for promissory estoppel.

Next, KBP argues that USG failed to adequately plead its claim for promissory estoppel in the alternative. Again, the Court agrees.

---

[2] The Court disagrees that the cases relied on by USG for the proposition that "[a] third-party beneficiary is bound by the terms of the contract in the same manner as the parties are bound" requires a different result. (Dckt. #211 at 9). Those cases involved different factual scenarios and did not expressly address the propriety of bringing a breach of contract claim against a third-party beneficiary that was not a party to the agreement. *See Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 882 N.E.2d 157, 180 (Ill.App.Ct. 2008) (involved compelling arbitration); *Streams Club, Ltd. v. Thompson*, 536 N.E.2d 459, 462 (Ill.App.Ct. 1989) (involved modification of contract).

"Promissory estoppel is a theory of recovery that provides a remedy 'for those who rely to their detriment, under certain circumstances, on promises, despite the absence of any mutual agreement by the parties on all the essential terms of a contract.'" *Song v. PIL, L.L.C.*, 640 F.Supp.2d 1011, 1016 (N.D.Ill. 2009), *quoting Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 526 (Ill. 2009). To state a claim for promissory estoppel, a plaintiff must allege "(1) defendant made an unambiguous promise to plaintiff; (2) plaintiff relied on such promise; (3) plaintiff's reliance was expected and foreseeable by defendants; and (4) plaintiff relied on the promise to its detriment." *Song*, 640 F.Supp.2d at 1016.

As the parties agree, a party may plead quasi-contractual claims such as promissory estoppel in the alternative to a breach of contract claim. *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013); *see also* Fed.R.Civ.P. 8(a)(3) (providing that "a demand for the relief sought [ ] may include relief in the alternative"). To properly do so, "plaintiff may plead breach of contract in one count . . . and promissory estoppel in [another], [and] it may not include allegations of an express contract which governs the relationship of the parties, in the count[] for . . . promissory estoppel." *Cohen*, 735 F.3d at 615 (cleaned up).

USG has done just that here despite its assertion to the contrary. Indeed, while USG does not incorporate the specific paragraphs of its breach of contract count in its promissory estoppel count, it *does* incorporate all of the facts alleged in paragraphs 1-35 of the second amended complaint, (*see* Dckt. #221 ¶78), some of which include allegations of an express contract. (*See* Dckt. #221 ¶7 ("Personal jurisdiction exists over KBP by, among other things, purposefully availing itself of the laws of this jurisdiction . . . and benefitting from and being bound by the express terms of the Settlement Agreement[.]"); ¶29 ("[T]he submitted orders constitute a valid contract which obligated Dependable and KBP to pay USG for those orders.")). As such, USG

12

has not properly pled its alternative theory and the Court dismisses Count VII for promissory estoppel. *See Cohen*, 735 F.3d at 615 (dismissal proper where plaintiff failed to properly plead in the alternative); *Cross*, 2017 WL 2798398, at *11 (same); *cf. Song v. PIL, L.L.C.,* 640 F.Supp.2d at 1016 ("Song . . . has avoided the problem of incorporating allegations of an express contract in his unjust enrichment and promissory estoppel claims.").[3]

### 3. USG has failed to state a claim against KBP for account stated.

Finally, KBP contends that USG failed to state a claim for "account stated" because, *inter alia*, it is not a separate cause of action under Illinois law and must be dismissed. In light of the dismissal of USG's claims for breach of the Agreement and promissory estoppel, the Court agrees.

"An account stated is an agreement between parties who previously engaged in transactions that the account representing those transactions is true and the balance stated is correct, together with a promise for the payment of the balance." *Dreyer Med. Clinic, S.C. v. Corral*, 591 N.E.2d 111, 114 (Ill.App.Ct. 1992). "The agreement is often formed by one party submitting a statement of account to another, who retains the account beyond a reasonable time without objection." *GFRB, LLC v. Worthy Promotional Prods., LLC*, 746 F.Supp.3d 540, 556 (N.D.Ill. 2024) (citing *Brad Foot Gear Works, Inc. v. Delta Brands, Inc.*, 332 F.Supp.2d 1123, 1125 (N.D.Ill. 2004)). But "an account stated is not an independent cause of action under Illinois law." *GFRB, LLC*, 746 F.Supp.3d at 556. Instead, an "'account stated' claim is related to a contract claim. It only determines the amount of a debt where liability already exists, it does not create a new liability on its own." *Medix Staffing Sols., Inc. v. Novo Health, LLC*, No. 22-CV-225, 2024 WL 579995, at *5 (N.D.Ill. Feb. 13, 2024).

---

[3] Of course, if USG does not re-plead its claim for breach of an express agreement with KBP, it would not need to re-plead its claim for promissory estoppel in the alternative.

Here, having otherwise dismissed USG's claims for breach of the Settlement Agreement and promissory estoppel, the account stated claim cannot stand alone, and the Court grants KBP's motion to dismiss Count VIII. *See id.* ("The Court has already found in Medix's favor on its breach of contract claim for the entire amount owed. Therefore, the Court dismisses Count II as moot.").

## CONCLUSION

For the foregoing reasons, KBP's motion to dismiss pursuant to Rule 12(b)(6) is granted, USG's Settlement Agreement (Count V), promissory estoppel (Count VII), and account stated (Count VIII), are dismissed without prejudice and with leave to replead solely to the extent USG can do so consistent with this Memorandum Opinion and Order and the dictates of Federal Rule of Civil Procedure 11. Any amended complaint must be filed by October 17, 2025.

**DATE: September 26, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**

14